[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13536-J

_____

IN RE: STEVEN JACKSON,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

_____

Before MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

ORDER:

Steven Jackson has filed a pro se application for permission to file a

28 U.S.C. § 2255 motion based on Johnson v. United States, 576 U.S. ___, 135 S.

Ct. 2551 (2015).  Because Mr. Jackson already has filed one § 2255 motion in the

past, his new motion must be "certified as provided in section 2244 by a panel of

the appropriate court of appeals to contain . . . a new rule of constitutional law,

made retroactive to cases on collateral review by the Supreme Court, that was

previously unavailable."  28 U.S.C. § 2255(h)(2).  "The court of appeals may

authorize the filing of a second or successive application only if it determines that

the application makes a prima facie showing that the application satisfies the requirements of this subsection." Id. § 2244(b)(3)(C).

## I.

Mr. Jackson was sentenced using the Armed Career Criminal Act (ACCA), which can increase a prison sentence based on three prior convictions for either a "violent felony." See 18 U.S.C. § 924(e). ACCA gives three definitions of "violent felony." First, § 924(e)(2)(B)(i) refers to any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." This is known as the "elements clause." Second, § 924(e)(2)(B)(ii) covers any offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The first 9 words of that subsection are called the "enumerated crimes clause," and the last 13 are called the "residual clause." Johnson held that ACCA's "residual clause" is unconstitutional. This rule applies retroactively to cases on collateral review. See Welch v. United States, __ U.S. __, __, 136 S. Ct. 1257, 1268 (2016).

When a prisoner seeks permission to file a second or successive § 2255 motion based on Johnson, "[w]e may only deny the application if it is clear that the motion will not contain a Johnson claim." In re Rogers, No. 16-12626, 2016 WL

2

3362057, at *1 (11th Cir. June 17, 2016) (per curiam).  This can happen in two ways.  First, the application may be denied if "the sentencing court record demonstrates that the sentencing court specifically identified three prior convictions as qualifying as ACCA predicates under the elements or enumerated crimes clauses, or based on the 'serious drug offense' provision."  Id.  Second, the application may be denied if, "under binding precedent, it is clear that the prior convictions the sentencing court identified categorically qualify as ACCA predicates under the elements or enumerated crimes clauses."  Id.  But if "the record does not make clear that the sentencing court relied solely on the ACCA's still-valid provisions to classify each predicate offense and binding precedent does not otherwise demonstrate that only valid ACCA clauses are implicated," then the applicant must be allowed permission to file his § 2255 motion.  Id.

Mr. Jackson's application meets neither of those exceptions.  The presentence investigation report (PSI) in Mr. Jackson's case did not specify which prior convictions were ACCA predicates.  Then, at the sentence hearing, the judge did not announce any finding about which convictions she relied on to support Mr. Jackson's ACCA sentence or about which ACCA definitions applied.  We are therefore left to examine whether binding precedent otherwise shows that the sentencing judge relied only on the parts of ACCA that are still valid today.  The

3

PSI listed these four convictions that potentially could serve as ACCA predicates: (1) a 1971 Florida conviction for assault with intent to commit a felony; (2) a 1971 Florida conviction for aggravated assault; (3) a 1975 Florida conviction for robbery; and (4) a 1986 federal conviction for possession with intent to distribute heroin. The federal drug conviction definitively qualifies as ACCA a predicate. See 18 U.S.C. § 924(e)(2)(A)(i). But this is the only one we can be sure about.

First, for Mr. Jackson's 1971 conviction for assault with intent to commit a felony, no "current binding precedent makes undeniably clear" that this crime meets ACCA's "elements clause" definition. We recognize that Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328 (11th Cir. 2013), held that a conviction for aggravated assault under Florida Statute § 784.021 met ACCA's "elements clause" definition. See id. at 1338. Florida Statute § 784.021 defines "aggravated assault" as "an assault" with either "a deadly weapon" or "intent to commit a felony." "Assault" is defined separately in Florida Statute § 784.011 as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Turner concluded that "a conviction under section 784.021 will always include 'as an element the . . . threatened use of physical force against the person of another'" "because by its

4

definitional terms" § 784.011 requires a threat "to do violence."  709 F.3d at 1338.

The problem is that § 784.011 did not exist when Mr. Jackson was convicted.  The Florida legislature enacted that statute in 1974, well after Mr. Jackson's 1971 convictions.  Before the statute went into effect on July 1, 1975, "the elements of an 'assault' were not expressed in any statute," and the state's common law definition of "assault" was "a wrongful action creating a fear of imminent bodily harm coupled with an apparent present ability to inflict injury." State v. White, 324 So. 2d 630, 631 (Fla. 1975).  This definition lacked the "to do violence" element that Turner found critical.  This means Turner does not apply to Mr. Jackson's assault convictions.  It therefore remains unclear whether Mr. Jackson's assault convictions qualify as ACCA predicates after Johnson.[1]

Mr. Jackson's 1975 robbery conviction may not qualify under the elements clause either.  Though this court held in United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011), that a robbery under Florida Statute § 812.13(1) met ACCA's "elements clause" definition, that case construed a very different statutory scheme. Before 2000, a defendant could commit robbery under § 812.13(1) either by use of force or by "sudden snatching," which Florida courts construed as not requiring

---

[1] Even if Turner's holding applied to Mr. Jackson's aggravated assault conviction, it is not clear whether his pre-1975 conviction for assault with intent to commit a felony has the same elements.

5

force.  See United States v. Welch, 683 F.3d 1304, 1311 n.29 (11th Cir. 2012).  In

2000, the Florida legislature separated robbery by sudden snatching into its own

statute.  Id. at 1311 & n.30; see also Fla. Stat. § 812.131.  Lockley analyzed this

later scheme and held that this new version of § 812.13(1) met United States

Sentencing Guidelines § 4B1.2's "elements clause" definition.[2]  Because of this

2000 change in Florida law, attempted "snatching from the person might [have]

furnish[ed] the basis for" Mr. Jackson's 1990 conviction "but not [for the

conviction at issue] in Lockley."  Welch, 683 F.3d at 1312.

Welch thus held that Gregory Welch's pre-2000 Florida robbery conviction

met ACCA's "residual clause" definition, but we left open whether it also met the

"elements clause" definition.  See id. at 1312–13.  When Mr. Welch filed a § 2255

motion, we upheld his sentence again and the Supreme Court reversed, explaining

that "reasonable jurists at least could debate whether Welch is entitled to relief" on

account of Johnson.  Welch, 136 S. Ct. at 1268.  And now, with the "residual

clause" gone, this court has ordered oral argument on the question about pre-2000

Florida robbery left open in those cases.  See United States v. Seabrooks, No. 15-

10380 (11th Cir. May 12, 2016).  This means no "current binding precedent makes

---

[2] Also, the bulk of Lockley's analysis (at least 13 paragraphs of the opinion) focused on the argument that "Lockley's prior attempted robbery conviction qualifies as a 'crime of violence' because robbery is an enumerated offense" in § 4B1.2's application note.  632 F.3d at 1240–45.  Unlike that application note, ACCA does not enumerate robbery as a "violent felony."

6

undeniably clear that, absent the residual clause," Mr. Jackson's 1975 robbery conviction is still a "violent felony." Rogers, 2016 WL 3362057, at *2. Because binding precedent does not dictate that Mr. Jackson has three ACCA predicates despite Johnson, he has made "a prima facie showing" that his application "contain[s]" a Johnson claim. 28 U.S.C. §§ 2244(b)(3)(C), 2255(h).

## II.

Although Mr. Jackson's application contains a Johnson claim, the one-year statute of limitations for § 2255 motions based on Johnson expires this weekend, and today is Friday.[3] This raises a question: does the fact that Mr. Jackson's motion will be filed after the one-year deadline require us to deny him permission to even file that motion? The answer is no. The Supreme Court has held that courts "must accord the parties fair notice and an opportunity to present their positions" on the statute of limitations in federal habeas cases. Day v. McDonough, 547 U.S. 198, 210, 126 S. Ct. 1675, 1684 (2006). Neither Mr. Jackson nor the government has had any such notice and opportunity, so we can't know what the District Court will decide about the timeliness of Mr. Jackson's

---

[3] The Supreme Court says the § 2255(f)(3) limitations period begins to run on the date that the Court initially announces a new rule like Johnson, even if the Court does not make this rule retroactive until later. Dodd v. United States, 545 U.S. 353, 359, 125 S. Ct. 2478, 2482–83 (2005). Johnson was decided on June 26, 2015. June 26, 2016 is the day after tomorrow. Mr. Jackson filed his pro se application on June 13, 2016.

§ 2255 motion once he files it.  We therefore conclude that whether a § 2255 motion will be timely is "not relevant to whether [the applicant] can obtain permission to bring a second or successive § 2255 motion," In re Joshua, 224 F.3d 1281, 1282 n.2 (11th Cir. 2000) (per curiam), in cases where the parties have not had "fair notice and an opportunity to present their positions" on the limitations bar, Day, 547 U.S. at 210, 126 S. Ct. at 1684.

This court has long held that the § 2255(f) deadline "is a garden-variety statute of limitations, and not a jurisdictional bar." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam).  Because a "statute of limitations defense . . . is not 'jurisdictional,' . . . courts are under no obligation to raise the time bar sua sponte." Day, 547 U.S. at 205, 126 S. Ct. at 1681 (emphasis omitted). While courts are nonetheless permitted (but again, not obliged) to consider a limitations defense sua sponte in certain cases, "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." Id. at 209–10, 126 S. Ct. at 1684.  Once a court has provided the parties with fair notice and an opportunity to argue their positions, the "inquiry" is "case-specific" and courts can raise a time bar sua sponte only if "the interests of justice would be better served . . . by dismissing the petition as time barred." Wood v. Milyard, __ U.S. __, __, 132 S. Ct. 1826, 1834 (2012) (quotations

8

omitted); see also id. ("Although a court of appeals has discretion to address, sua sponte, the timeliness of a habeas petition, appellate courts should reserve that authority for use in exceptional cases.").

Neither the government nor Mr. Jackson has presented a position about a limitations defense in this case.  Indeed the government may not even know about Mr. Jackson's application at this stage, and it cannot take a position on the case until Mr. Jackson actually files his § 2255 motion in the District Court.  Once Mr. Jackson files that motion, if the government "intelligently choose[s] to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice."  Day, 547 U.S. at 210 n.11, 126 S. Ct. at 1684 n.11; see also id. 547 U.S. at 217–18, 126 S. Ct. at 1688–89 (Scalia, J., dissenting) ("There are many reasons why the State may wish to disregard the statute of limitations, including the simple belief that it would be unfair to impose the limitations defense on a particular defendant."); Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1261 (11th Cir. 2013) ("[T]he procedural-default rule is not jurisdictional, but is an affirmative defense that is subject to waiver by the government.").  We cannot know at this point whether the government will choose to invoke a statute of limitations defense in this case or decide to waive it, and we see no basis for

9

denying the government that choice.[4]

Just as we cannot predict what position the government might take in this litigation, neither can we predict whether Mr. Jackson would be able to overcome a limitations defense if the government chooses to raise one. As we've said, the § 2254 and § 2255 statutes of limitations are both "ordinary statutes of limitation and not jurisdictional bars." Sandvik, 177 F.3d at 1271. This means that "in the proper case § 2255's period of limitations may be equitably tolled." Id. The question of tolling is a "fact-specific, case-by-case" inquiry. Downs v. McNeil, 520 F.3d 1311, 1322 (11th Cir. 2008). At this early stage in a second or successive § 2255 case, Mr. Jackson has not yet filed a § 2255 motion. That means "no lower court has yet considered in detail the facts of this case to determine whether they [] constitute extraordinary circumstances sufficient to warrant equitable relief." Holland v. Florida, 560 U.S. 631, 653–54, 130 S. Ct. 2549, 2565 (2010).

There are many reasons a prisoner might file a § 2255 motion late, at least some of which may be extraordinary enough to warrant equitable tolling. This is

---

[4] We do know however that before Welch the government assured the Supreme Court that lower courts "may not 'bypass, override, or excuse' the government's 'deliberate waiver of a limitations defense' in a habeas case." Brief for the United States in Opposition at 19, In re Sharp, No 15-646 (U.S. Dec. 16, 2015) (quoting Wood, 132 S. Ct. at 1830); see also Brief for the United States in Opposition at 25, In re Triplett, No 15-625 (U.S. Dec. 14, 2015) (same). Sharp and Triplett were also cases where prisoners sought leave to file successive § 2255 motions, just as Mr. Jackson did here. The government asked the Supreme Court not to hear either case and suggested it could waive the statute of limitations defense if those prisoners were unable to file § 2255 motions before the June 26, 2016, deadline.

all the more so when, like Mr. Jackson, the prisoner is without a lawyer. Though prisoners in most circuits could file <u>Johnson</u> claims a year ago when the Supreme Court decided <u>Johnson</u> on June 26, 2015, prisoners sentenced in the Eleventh Circuit were not able to do the same until the Supreme Court decided <u>Welch</u> on April 18, 2016. Before <u>Welch</u> was decided, our court denied all applications for permission to file second or successive § 2255 motions based on <u>Johnson</u>. But just because <u>Welch</u> generally gave prisoners in our circuit these two months to file (or in many cases re-file) their applications and then await our rulings on them does not mean every prisoner in fact had that ability. For example, a prisoner may have been in lockdown without access to legal materials during that short period. Or an appeal of a prisoner's first § 2255 motion may have still been pending beyond his control during that period. Or a lawyer may have filed a second application after examining the PSI for a prisoner whose application we denied based on a misunderstanding of the facts.[5] Or a prisoner may have hired a lawyer who promised to file something but then abandoned him. These are just examples. There may be other situations that warrant equitable relief.

---

[5] Where an order was erroneous, a prisoner may in some cases be able to file a new application. See <u>In re Griffin</u>, No. 16-12012, 2016 WL 3002293, at *5 n.4 (11th Cir. May 25, 2016) ("[D]enials of successive applications are without prejudice.") (per curiam); <u>In re Lambrix</u>, 776 F.3d 789, 793–94 (11th Cir. 2015) (per curiam) (recognizing an exception to the law-of-the-case doctrine where "the prior appellate decision was clearly erroneous and would work manifest injustice" (quotation omitted)).

11

At this stage, we usually have no indication about why an applicant might be seeking to file a successive motion now rather than earlier. As we have explained before, we typically face significant limits at this stage:

> When we make that prima facie decision we do so based only on the petitioner's submission. We do not hear from the government. We usually do not have access to the whole record. And we often do not have the time necessary to decide anything beyond the prima facie question because we must comply with the statutory deadline. Even if we had submissions from both sides, had the whole record before us, and had time to examine it and reach a considered decision on whether the new claim actually can be squeezed within the narrow exceptions of § 2244(b)(2), the statute does not allow us to make that decision at the permission to proceed stage. It restricts us to deciding whether the petitioner has made out a prima facie case of compliance with the § 2244(b) requirements.

Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1357–58 (11th Cir. 2007) (citation omitted). On top of that, the sole document we typically have at this stage is the standard form that Rule 22-3 of our court's rules require applicants to use when seeking permission to file their § 2255 motion.[6] Nothing in this form asks whether the motion that the prisoner wishes to file will be timely or, if it won't be, why.

---

[6] See http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/Form2255APP.pdf ("All applicants seeking leave to file a second or successive petition are required to use this form." (emphasis added)); see also 11th Cir. R. 22-3(a) ("An applicant seeking leave to file a second or successive habeas corpus petition or motion to vacate, set aside or correct sentence must use the appropriate form provided by the clerk of this court." (emphasis added)). Death cases are different. See 11th Cir. R. 22-3(a) ("In a death sentence case, the use of the form of is optional."). The form says: "In capital cases only, the use of this form is optional."

12

The form also warns: "All questions must be answered concisely in the proper space on the form." And it says: "Do not submit separate petitions, motions, briefs, arguments, etc."[7] When a prisoner's application for leave to file complies with those requirements, it is unlikely to be "at all clear from the documents presented to us whether [the applicant's] claim is procedurally barred, or whether he abused the writ by waiting until now to file this petition." In re Holladay, 331 F.3d 1169, 1176 n.5 (11th Cir. 2003). We can and do "expect these matters to be more fully developed and addressed in the district court." Id.; see also Jordan, 485 F.3d at 1358 ("Things are different in the district court. That court has the benefit of submissions from both sides, has access to the record, has an opportunity to inquire into the evidence, and usually has time to make and explain a decision.").

The question of whether Mr. Jackson's § 2255 motion will be timely is "not relevant to whether [he] can obtain permission" to file the motion. Joshua, 224 F.3d at 1282 n.2. At the same time, we recognize that this hands-off approach will not suit every application for permission to file a second or successive § 2255

---

[7] Even if Mr. Jackson's application included a copy of the § 2255 motion he plans to file (which would violate the instructions on the form), he would not be required to plead a response to a limitations defense in that motion. To the contrary, Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts dictates only that the motion "specify all the grounds for relief available," "state the facts supporting each ground," and "state the relief requested." And Rule 5(b) of the Rules Governing Section 2254 Proceedings specify that the government's answer to a § 2254 petition "must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations."

13

motion.  Although the Supreme Court has "decline[d] to adopt an absolute rule barring a court of appeals from raising, on its own motion, a [] timeliness defense," whether a court can do so is a "case-specific[] inquiry," and "appellate courts should reserve that authority for use in exceptional cases."  Wood, 132 S. Ct. at 1834.  This is not one of those "exceptional cases."[8]

### III.

In conclusion, we grant Mr. Jackson's application to file a new § 2255 motion and leave questions about the timeliness of that motion to the District Court to decide in the first instance.  That court "must accord the parties fair notice and an opportunity to present their positions" on the issue, just as it would in any other § 2255 case where this issue could arise.  Day, 547 U.S. at 210, 126 S. Ct. at 1684.  Nothing about our ruling here binds the District Court, which must decide the

---

[8] Wood's reference to "exceptional cases" also explains In re Hill, 437 F.3d 1080 (11th Cir. 2006) (per curiam).  Hill followed Holladay, where we granted permission to file a second or successive habeas petition based on Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242 (2002), even though it was "not at all clear from the documents presented to us whether . . . [Holladay] abused the writ by waiting until now to file."  331 F.3d at 1176 n.5.  Mr. Hill also asked to file a second or successive petition based on Atkins.  But he made this request over three years after the Atkins decision and just four days before his scheduled execution, which he also asked our court to stay.  Id. at 1081–82.  The state filed a response that invoked and explained the time bar.  Mr. Hill filed a reply two days later.  We denied both of Mr. Hill's requests on the day of his execution.  An imminent execution is no doubt an "exceptional" reason to rule on timeliness more quickly than normal.  Also, the parties in Hill filed a full round of briefing, which gave them both "fair notice and an opportunity to present their positions."  Day, 547 U.S. at 210, 126 S. Ct. at 1684.  Hill in no way "address[ed] the timeliness of a habeas petition on the court's own initiative."  Wood, 132 S. Ct. at 1831.  Unlike in Hill, if we denied Mr. Jackson's application based on the statute of limitations we would be reaching out and deciding the issue without any presentation from either side.

14

timeliness issue "fresh, or in the legal vernacular, <u>de novo</u>." <u>Jordan</u>, 485 F.3d at 1358. And when we say every aspect, we mean every aspect. For example, Mr. Jackson filed his application on June 13, and today is June 24. We leave to the District Court to decide in the first instance whether the 11 days that elapsed between Mr. Jackson filing his application and our granting the application should count against him when he files his § 2255 motion.[9] Also, Mr. Jackson filed his application pro se, which means a limitations defense might require the District Court to rule on the prison mailbox rule along with any potential claim of equitable tolling. As usual, whatever

> determination that the district court makes about whether Mr. [Jackson] has satisfied the requirements for filing a second or successive motion, and any determination it makes on the merits, if it reaches the merits, is subject to review on appeal from a final judgment or order if an appeal is filed. Should an appeal be filed from the district courts determination, nothing in this order shall bind the merits panel in that appeal.

<u>In re Moss</u>, 703 F.3d 1301, 1303 (11th Cir. 2013).

**APPLICATION GRANTED.**

---

[9] <u>See, e.g.</u>, <u>Orona v. United States</u>, No. 16-70568, 2016 WL 3435692, at *2 (9th Cir. June 22, 2016) (per curiam) ("[T]he filing of a second or successive application in our court tolls the 1-year statute of limitations . . . until our court rules on the application."); <u>Easterwood v. Champion</u>, 213 F.3d 1321, 1324 (10th Cir. 2000) (tolling the time to file a habeas petition "during the twenty-three days that Mr. Easterwood's request to file a successive habeas petition was pending before this court"); <u>see also</u> <u>Fierro v. Cockrell</u>, 294 F.3d 674, 681 n.12 (5th Cir. 2002) (noting but not deciding whether the pendency of an application for permission to file "in a court of appeals may equitably toll" the one-year statute of limitations).