[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11216
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-20395-UU

ALEXANDER EUGENIO MOSKOVITS,
individually and for all those similarly situated,

Plaintiff - Appellant,

versus

ALDRIDGE PITE, LLP,
f.k.a. Aldridge Connors, LLP,
SARAH BARBACCIA, ESQ.,
MINDY DATZ, ESQ.,
ROSA M. SUTTLE,
MCGLINCHEY STAFFORD, PLLC, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 24, 2017)

Before WILLIAM PRYOR, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

*Pro se* plaintiff Alexander Moskovits filed a putative class-action suit in the

Southern District of Florida against twenty-three defendants, alleging that

defendants engaged in a widespread conspiracy to fraudulently foreclose on

mortgaged properties throughout the state of Florida.  Plaintiff appeals from the

district court's *sua sponte* dismissal of his complaint without prejudice for failure

to comply with court order and failure to prosecute.  Upon careful review of the

record, we find no abuse of discretion and affirm the district court's dismissal.

## BACKGROUND

### I.    Facts Alleged[1]

Plaintiff's allegations relate to a single home mortgage executed in Miami

Beach, Florida, by an individual named Mel Gorham.  In late 2007, Gorham

---

[1]  We derive the pertinent facts exclusively from Plaintiff's complaint dated February 3, 2016.
We assume these facts to be true.

2

borrowed a sum of $417,000 from HSBC Mortgage Corp. ("HSBCMC"), apparently for the purpose of purchasing Plaintiff's Miami Beach home (the "Miami property"). Around the same time, Plaintiff conveyed the Miami property to Gorham via quitclaim deed. Plaintiff then joined Gorham in co-signing a thirty-year mortgage on the Miami property to secure Gorham's borrowing.

The mortgage instrument identifies both Gorham and Plaintiff as joint borrowers of the $417,000 from HSBCMC. HSBCMC is, in turn, identified as lender throughout the relevant documentation. The mortgage instrument additionally designates Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee, acting "solely as nominee" for lender HSBCMC. In so designating, the mortgage instrument empowers MERS to exercise HSBCMC's right to foreclose on the subject property in the event of default.

In the ensuing three years, home values plummeted and employment prospects deteriorated. Gorham ultimately found herself in the position many homeowners faced at the height of the Great Recession: underwater on her mortgage, unemployed, and unable to make her monthly loan payments. In the meantime, Plaintiff alleges, HSBCMC profited from the housing boom and bust by "repeatedly" selling and reselling its interest in mortgages like Gorham's to investors "in the secondary market." As a result, Plaintiff's theory goes, HSBCMC

3

no longer held a security interest in the Miami property at the time Gorham finally defaulted on her mortgage.

HSBCMC nonetheless attempted to foreclose on the Miami property in August 2010. Shortly after HSBCMC filed its foreclosure action, Gorham received a letter stating that her mortgage loan had been "transferred to" HSBCMC in September 2010 and that HSBCMC was Gorham's "new creditor." The record before us does not clarify the legal significance of this letter, nor is there any evidence regarding the status of HSBCMC's mortgage interest (or lack thereof) at the time of the foreclosure filing. But as the Complaint alleges, this letter represented HSBCMC's *post hoc* attempt to regain its interest in the Miami property after selling it in the secondary market. As such, the letter supports Plaintiff's theory that HSBCMC did not hold a security interest in Gorham's mortgage at the time it sought to foreclose.

Plaintiff cites the August 2010 foreclosure filing and subsequent letter as evidence that HSBCMC, MERS, and other entities involved in servicing Gorham's mortgage were involved in "a scheme to file fraudulent documents against [Plaintiff] to extract his property." Plaintiff does not deny that Gorham was, indeed, in default, nor does he allege that foreclosure was improper or unwarranted for any reason. Rather, Plaintiff argues that HSBCMC lacked standing to bring the

4

August 2010 foreclosure action because, after selling the mortgage "repeatedly" in the secondary market, HSBCMC had failed to successfully reacquire its interest before initiating foreclosure. Plaintiff maintains that "[f]iling a foreclosure lawsuit . . . without standing constitutes an intrinsic fraud against the homeowner and an extrinsic fraud upon the Court." And this fraudulent filing, Plaintiff alleges, was an act in furtherance of a "conspiracy between the defendants to unlawfully extract property from homeowners throughout the State of Florida." HSBCMC voluntarily dismissed the foreclosure suit in December 2012 for reasons not reflected in the record. Plaintiff has not specified the nature or extent of any injury he suffered as a result of the August 2010 filing.[2]

Plaintiff goes on to allege a second, similar instance of fraud, this time involving MERS and another HSBC entity, HSBC Bank USA, N.A. ("HSBCNA"). In November 2012, MERS—acting as "nominee" of original lender HSBCMC—

---

[2] While Plaintiff maintains that Defendants collectively sought to "extract his property" through fraudulent foreclosure, neither his factual assertions nor the evidence he presents suggest that Plaintiff lived in or retained an ownership interest in the Miami property at any point after conveying it to Gorham in 2007. Instead, the record suggests that Plaintiff was liable to HSBCMC, if at all, as a co-signer or guarantor on Gorham's initial home loan. Consistent with this status, Plaintiff has not asserted that the foreclosure proceeding threatened to displace him from his home. Nor does Plaintiff suggest that HSBCMC or any other party sought to hold him directly liable on Gorham's missed loan payments. Plaintiff has failed to clarify in his complaint any other theory on which HSBCMC's attempted foreclosure injured him directly.

5

executed a "corporate assignment of mortgage" purporting to assign the Gorham mortgage to HSBCNA.  The assignment was signed on behalf of MERS by Rebecca A. Cosgrove and recorded shortly thereafter.  Plaintiff alleges that the assignment constituted a "fraudulent legal document" because Cosgrove was an employee of HSBC, and not an agent of MERS, at the time she executed the assignment and because the notary public who notarized the document was "a fraud and known to be a fraud by the defendants."  At a minimum, Plaintiff argues, the purported assignment by MERS, as nominal mortgagee, had no legal effect because only the actual holder of the note was authorized to assign its interest to another party.  Here again, Plaintiff fails to allege that he suffered any injury as a result of the execution or public recordation of this assignment.

The final instance of alleged fraud occurred in April 2014, when HSBCNA—acting through mortgage-loan servicer PHH Mortgage Corp.—filed a second foreclosure proceeding against Gorham and Plaintiff.  As before, Plaintiff does not contend that foreclosure was improper or that Gorham was not in default.  Plaintiff's contention is that, because the attempted assignment of Gorham's mortgage by MERS to HSBCNA was legally insufficient at best and fraudulent at worst, HSBCNA lacked standing to foreclose on the Miami property.  In so alleging, Plaintiff reasserts his contention that filing a foreclosure suit without

6

standing constitutes fraud and characterizes the April 2014 foreclosure filing as a further step in Defendants' "conspiracy . . . to unlawfully extract property from homeowners." Plaintiff again fails to specify the nature of any injury he may have suffered as a result of this allegedly fraudulent filing. At the time Plaintiff filed this appeal, HSBCNA's foreclosure proceeding remained pending in Florida state court.[3]

Plaintiff adds several conclusory allegations to this primary list of frauds, including dissemination by Defendants of "deceitful [ ] collection letters regarding impending foreclosures [and] notices of pendencies" and false billing of attorneys' fees and costs in the course of foreclosure proceedings. Plaintiff does not, however, assert any facts to substantiate these allegations.

## II.   Procedural History

On the basis of these alleged facts, Plaintiff filed a putative class-action complaint in the Southern District of Florida in February 2016, more than four

---

[3] It is worth noting that, in the Florida state proceeding, Plaintiff asserted the same lack-of-standing argument as a defense to foreclosure. *See generally* Motion to Dismiss Foreclosure Action, *HSBC Bank USA N.A. v. Gorham*, No. 2010-010344-CA-01 (Fla. Cir. Ct. June 6, 2014). The state court denied Plaintiff's motion to dismiss in February 2016, finding no merit in Plaintiff's claim that HSBCNA lacked standing to foreclose on the Miami property. *See* Order on Motion to Dismiss Foreclosure Action, *HSBC Bank USA, N.A. v. Gorham*, No. 2014-010344-CA-01 (Fla. Cir. Ct. Feb. 9, 2016). Plaintiff filed this Complaint in the Southern District of Florida shortly thereafter, attempting this time to use his lack-of-standing argument as a sword rather than a shield.

years after the first foreclosure action was filed.  The Complaint names twenty-three defendants, including MERS, HSBCMC, HSBCNA, and the law firms and mortgage servicers involved in Gorham's foreclosure.  Plaintiff seeks individual and class-wide damages on three substantive counts:  *first*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)–(d), predicated on instances of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343; *second*, common-law unjust enrichment resulting from false billing practices; and *third*, violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e and 15 U.S.C. § 1692j, resulting from defendants' dissemination of misleading collections communications.  The Complaint made clear that Plaintiff was proceeding on a *pro se* basis and is a resident of Brazil.

Two days after Plaintiff filed the Complaint, the district court filed a *sua sponte* order requiring Plaintiff to file a RICO case statement by February 17, 2016 (the "RICO Order").[4]  The RICO Order advised Plaintiff that "failure to comply . . . will result in the dismissal of the case without further notice."

---

[4]  Under the Southern District of Florida's Local Rules, a RICO case statement is a plain statement of the facts on which a civil RICO claim relies.  RICO case statements are no longer mandatory in the Southern District of Florida, but courts may still request them on a case-by-case basis.  S.D. Fla. R. 12.1 (repealed 2011) & cmt.

8

February 17 came and went, and Plaintiff failed to file a RICO statement as required.  The district court dismissed the Complaint without prejudice on February 18 for failure to prosecute, citing Plaintiff's apparent disregard for the court-ordered deadline.  Plaintiff now appeals the district court's dismissal without prejudice, arguing that the court abused its discretion by failing to give him prompt notice of the RICO Order and sufficient time to comply.[5]

## STANDARD OF REVIEW

We review a district court's *sua sponte* dismissal without prejudice for an abuse of discretion.  *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).  "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law."  *Id.* (citing *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005)) (internal quotation marks omitted).

---

[5]  The court's dismissal of Plaintiff's suit is the only issue before us at this stage of the proceeding, but it is not the only issue Plaintiff has briefed.  Shortly after the lower court's dismissal, Plaintiff filed a separate motion seeking recusal of the district judge, assignment of a new judge, and appointment of counsel to represent him.  The Chief Judge for the Southern District Florida denied the motion.  Plaintiff immediately appealed to this Court, but he failed to pay the required filing fees or to file a timely motion to proceed *in forma pauperis*.  As a result, we dismissed that appeal for want of prosecution.  Plaintiff has nonetheless briefed the recusal and appointment-of-counsel issues in the appeal before us.  Because Plaintiff's appeal of those matters has been dismissed, and because their determination has no bearing on our assessment of the district court's dismissal, we do not consider them here.

## DISCUSSION

In dismissing Plaintiff's suit without prejudice, the district court relied on its inherent authority to sanction non-compliant or non-prosecuting plaintiffs "so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962).[6] To justify dismissal, the court noted that the RICO Order warned Plaintiff that failure to comply would result in dismissal of his complaint without further notice. Because Plaintiff failed to meet the Order's deadline, the court found that Plaintiff had violated a court order and failed to prosecute his case. The court explicitly provided that dismissal was "WITHOUT PREJUDICE."

---

[6] A district court may dismiss a case *sua sponte* under two possible sources of authority: (1) Federal Rule of Civil Procedure 41(b), which permits dismissal for failure "to prosecute or to comply with [the Federal Rules of Civil Procedure] or any order of court," and (2) the court's inherent power to issue orders necessary to efficiently manage their dockets. *Betty K Agencies, Ltd.*, 432 F.3d at 1337 (identifying dual sources of court's authority to dismiss *sua sponte* for lack of prosecution); *see also Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) ("The court's power to dismiss is an inherent aspect of its authority to enforce its orders and insure prompt disposition of lawsuits."). The district court relied on the latter source of authority, but case law defining the standard for Rule 41(b) dismissal remains instructive.

## I.    Notice and Opportunity to Comply

Plaintiff's chief argument on appeal is that the district court did not give him notice of the "'do or die' deadline" contained in the court's RICO Order in time for him to comply. He alleges a failure of notice on two fronts. First, he claims that he did not receive a copy of the RICO Order by postal mail at his Brazilian residence before the deadline elapsed. Second, he argues that he could not have learned of the Order electronically, because the Southern District of Florida "does not allow *pro se* parties to receive 'e-notice'" of docket filings. In Plaintiff's view, he could not have disobeyed the RICO Order if he was unaware of its requirements. And if there was no violation of court order and no resulting lack of prosecution, dismissal on those grounds was unjustified. Plaintiff further argues that dismissal without prior notice failed to afford him minimal due process in the pursuit of his claims.

There is merit to Plaintiff's concerns. A RICO statement is not required in a civil RICO case unless requested by the court,[7] so Plaintiff could not have known that he was obliged to file such a statement—or face dismissal—unless he had

---

[7] *See* S.D. Fla. R. 12.1 (repealed 2011) & cmt. (repealing "unnecessary" rule requiring plaintiffs to file a civil RICO case statement but noting that such statements have continued utility and may still be required on a case-by-case basis).

11

received the RICO Order itself. Plaintiff is correct that local filing requirements preclude *pro se* litigants from enrolling in the court's electronic notification system. *See* General Civil Case Filing Requirements § 2B (S.D. Fla. March 2016) ("Pro se litigants . . . are **not** permitted to file electronically or receive notices electronically.") (emphasis in original).[8] Instead, *pro se* litigants are "served and noticed by U.S. mail or in person" unless otherwise agreed. CM/ECF Administrative Procedures § 2C (S.D. Fla. Dec. 1, 2015). The entrance of the RICO Order on the docket on February 8 was therefore insufficient, by itself, to constitute notice of the February 17 deadline. The record contains no evidence of the court's mailing of the Order to Plaintiff's residence, so we are unable to reject Plaintiff's assertion that he never received notice by mail.

Given the leniency with which we treat *pro se* litigants' pleadings, a district court should not dismiss a *pro se* plaintiff's suit *sua sponte* without first confirming that the plaintiff had notice of the court's requirements and a reasonable opportunity to comply. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) ("A district court can only dismiss an action on its own motion as long as the

---

[8] The court does encourage *pro se* litigants to use the electronic records system to monitor their cases, but it does not require them to do so. *See* General Civil Case Filing Requirements § 1C (S.D. Fla. March 2016).

12

procedure employed is fair. To employ a fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond.") (internal citations and quotation marks omitted); *In re Jackson*, 826 F.3d 1343, 1348 (11th Cir. 2016) ("[B]efore acting on its own initiative" in dismissing a suit, "a court must accord the parties fair notice and an opportunity to present their positions.") (internal quotation marks omitted); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1069 (11th Cir. 2007) (same).

We do not, however, review a district court's *sua sponte* dismissal for abuse of discretion without considering its practical impact on the plaintiff's rights. Specifically, "[t]here is an exception to our general rule against dismissal without notice . . . if reversal would be futile." *See Tazoe*, 631 F.3d at 1336 (internal quotation marks omitted). As such, we inquire into the merits of Plaintiff's claims and ask whether dismissal prejudiced Plaintiff's ability to pursue those claims in compliance with the court's instruction.

## II.    Prejudice to Plaintiff

In general, a dismissal without prejudice is not an abuse of discretion and should be allowed absent some plain prejudice other than the mere prospect of a second lawsuit. *See Dynes v. Army Air Force Exch. Serv.*, 720 F.2d 1495, 1499 (11th Cir. 1983) ("[B]ecause the case was dismissed without prejudice, we cannot

13

say that the district court abused its discretion."). When a plaintiff is precluded from refiling a claim due to the running of the statute of limitations, dismissal is "tantamount to a dismissal with prejudice" and is subject to stricter review. *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. Unit B 1981);[9] *see also Dynes*, 720 F.2d at 1499 (finding that district court's dismissal for violation of court order was not an abuse of discretion, even though plaintiff's violation was minor, because dismissal was without prejudice); *Betty K Agencies, Ltd.*, 432 F.3d at 1337–38 (holding that dismissal with prejudice "is an extreme sanction that may be properly imposed *only* when: (1) a party engages in a clear pattern of delay or willful contempt . . . and (2) the district court specifically finds that lesser sanctions would not suffice") (internal quotation marks omitted).

If, however, a plaintiff's claim was time-barred at the time of filing, he necessarily cannot be prejudiced by dismissal, whether it be with or without prejudice. Similarly, where it is "patently obvious, given the legal and factual inadequacies of the complaint," that a plaintiff cannot prevail on his claims, reversal of a court's dismissal is not warranted regardless of its effect on the

---

[9] Under *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), this Court adopts as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

claims' timeliness.  *Byrne v. Nezhat*, 261 F.3d 1075, 1127 (11th Cir. 2001)

*abrogated on other grounds by Bridge v. Phoneix Bond & Indem. Co.*, 553 U.S.

639 (2008).

In short, the district court abused its discretion only if dismissal prejudiced

Plaintiff's ability to refile any of his viable claims.  In analyzing the timeliness

question here, it is worthwhile to note that Plaintiff's complaint was dismissed only

two weeks after it was filed.  Thus, in order for Plaintiff to have been prejudiced by

the district court's dismissal, the relevant limitations periods on any viable claims

would have to have run at some point within that two-week period.  If the

limitations period elapsed before the Complaint was filed or after it was dismissed,

Plaintiff was not prejudiced with respect to that claim by virtue of the district

court's dismissal.[10]

## A.    Civil RICO Claim

Civil RICO claims are subject to a four-year statute of limitations.

*Pilkington v. United Airlines*, 112 F.3d 1532, 1534 (11th Cir. 1997) (citing *Agency*

*Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987)).  A civil

---

[10]  We also note that Plaintiff seeks to proceed as representative of a class of plaintiffs under Fed. R. Civ. P. 23.  In order for Plaintiff to maintain this suit as a class action, his own claims must have been timely filed in the first instance.  *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002).

15

RICO claim accrues, and the four-year limitations period begins to run, "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Maiz v. Virani,* 253 F.3d 641, 676 (11th Cir. 2001) (citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

It is not clear from the face of the Complaint how, precisely, Plaintiff was injured, let alone when the alleged injury first became discoverable. Given this dearth of facts, the Complaint as currently drafted probably fails to state a viable RICO claim. We need not make that determination here, though, because we have found no interpretation of the facts under which the district court's dismissal prejudiced Plaintiff's ability to refile the claims.

The first incident from which RICO liability might have arisen dates to late 2010, when HSBCMC filed its first action to foreclose on the Miami property. The four-year limitations period on any claim arising from this first foreclosure elapsed in late 2014, nearly two years before Plaintiff filed his complaint. Thus, if Plaintiff's civil RICO claim began to accrue at or around the time of the first allegedly fraudulent foreclosure action—the most plausible assumption under the facts at hand—the claim was time-barred when Plaintiff filed his complaint.

Plaintiff does not assert that any misconduct occurred or was discovered at any point from late 2010 to November 2012. Thus, the facts alleged in the

16

complaint provide no basis on which to assume that Plaintiff's claim began accruing during this period.

The remaining instances of alleged misconduct occurred in November and December 2012 (when MERS assigned Gorham's mortgage to HSBCNA through an allegedly fraudulent assignment instrument) and in April 2014 (when HSBCNA initiated a second foreclosure action against the Miami property). If the first discoverable injury to Plaintiff had arisen in connection with any of this conduct, the limitations period would not have run until November 2016 at the earliest. This means that the district court's dismissal without prejudice in mid-February 2016 left Plaintiff with at least eight months to re-initiate his suit and supplement it with a RICO statement in compliance with the court's order. The court's dismissal, with the right to refile, therefore caused Plaintiff no prejudice under this interpretation of the timeline either.

In short, had Plaintiff wished to pursue his civil RICO claims, he was free to file an amended complaint articulating the nature of his injury.

B.    **Claim of Unjust Enrichment**

Plaintiff also asserts a claim of unjust enrichment under Florida common law on grounds that defendants "have been routinely overcharging members of the class for attorneys' fees and other fees and costs that have not been incurred." In

17

Florida, the limitations period for an unjust enrichment action is four years. *Grove Isle Ass'n, Inc. v. Grove Isle Assoc., LLLP*, 137 So.3d 1081, 1092 (Fla. 3d DCA 2014); Fla. Stat. § 95.11(3)(p) (allowing four years to bring "[a]ny action not specifically provided for in these statutes"). To prove a claim of unjust enrichment under Florida common law, the plaintiff must show that: (1) plaintiff conferred a benefit on defendant, (2) defendant voluntarily accepted and retained the benefit, and (3) it would be inequitable for defendant to retain that benefit without compensating plaintiff. *Grove Isle Ass'n*, 137 So.3d at 1094. The cause of action accrues, and the limitations period begins to run, when the last element constituting the cause of action occurs. *Id.* at 1092 (citing Fla. Stat. § 95.031(1)).

Plaintiff's allegations on this claim are beyond sparse, and he supplies no facts from which one might determine the exact nature, circumstances, or timing of the alleged overcharging. The legal and factual inadequacies of the Complaint make it patently obvious that Plaintiff cannot prevail on the claim without filing a significantly augmented pleading. *See Byrne*, 261 F.3d at 1127.

Importantly, the timing of dismissal has not meaningfully prejudiced Plaintiff's ability to file such a pleading. Because *pro se* pleadings are liberally construed, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), we assume for purposes of this analysis that the alleged overcharging occurred in

18

connection with one of the two foreclosure actions described in the Complaint. The first foreclosure action was brought in August 2010 and was voluntarily dismissed by HSBCMC in December 2012. The second action was not filed until April 2014. Any claims relating to the first foreclosure proceeding that began to accrue prior to February 3, 2012, were untimely at the time Plaintiff filed his complaint. Claims that arose after February 18, 2012, were not time-barred by the time of the district court's dismissal.

Thus, Plaintiff may have been prejudiced by dismissal only with respect to claims relating to the first foreclosure proceeding that arose after February 3 but before February 18, 2012. But Plaintiff alleges no facts in his complaint or on appeal from which we might infer that an unjust enrichment claim began to accrue within this narrow and crucial timeframe. Indeed, none of the facts articulated in the Complaint dates to this roughly two-week period. While we hold *pro se* pleadings to a less stringent standard than pleadings by counseled parties, "this leniency does not give a court license . . . to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (citing *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). We will not find an abuse of the district court's discretion on the mere possibility that Plaintiff held a valid and timely unjust

19

enrichment claim that became time-barred prior to the court's dismissal.

### C.    FDCPA Claim

Plaintiff finally alleges that certain of the named defendants "violated the FDCPA by misleading the plaintiff . . . into a false belief that a debt was owed" when they filed foreclosure actions "on behalf of a party that [was] not the real party in interest."  Whether or not Plaintiff alleges a sound theory of FDCPA liability, there is little question that the statute of limitations had run on any such claim well before Plaintiff brought suit.  An action to enforce any liability under the FDCPA "may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k.  The first foreclosure action identified in the Complaint was filed in August 2010; the second was filed in April 2014.  The Complaint was not filed until well after the one-year statute of limitations had run on any potential FDCPA claim.  Because the FDCPA claim was time-barred at the time suit was filed, the district court's dismissal had no prejudicial effect on it.

### CONCLUSION

For the foregoing reasons, because Plaintiff suffered no prejudice as a result of the district court's dismissal of his complaint without prejudice to refile, we **AFFIRM** the dismissal.

20