HULL, Circuit Judge:
Defendant Isaac Seabrooks appeals his convictions and 188-month total sentence. A jury found him guilty on one count of being a convicted felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and one count of possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). The district court determined that Seabrooks qualified as an armed career criminal under the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924(e), because he had six prior Florida armed robbery convictions, each of which qualified as a predicate “violent felony” under the ACCA.
After review of the record and with the benefit of oral argument, we affirm Sea-brooks’s convictions and sentence.
I. BACKGROUND
A. Offense Conduct
On July 23, 2014, Qonsheka Smith, a park ranger, observed a Cadillac with two occupants, later identified as Nigel Butler and Isaac Seabrooks, pull into a parking lot in Grapeland Park. Butler was driving the Cadillac, which was stolen, and Sea-brooks was sitting in the front passenger’s seat. Butler and Seabrooks were both convicted felons.
• Ranger Smith saw Butler roll down his window as he .pulled into -the parking, lot. Smith observed the Cadillac park next to a vacant green truck owned by Jose Cruz Smith, an individual who was at Grapeland Park to watch his nephew’s baseball game. Shortly after the Cadillac parked next to Cruz’s truck, the occupant of a red ear pulled into the parking lot, changed, the diaper of a child in the car, and drove away. After the red car left the parking lot, Ranger Smith saw Butler exit the Cadillac, break into the passenger-side door of Cruz’s truck, and remove several items from Cruz’s truck.
Ranger Smith immediately radioed the police dispatcher to inform the police of a theft in progress. Ranger Smith described Butler’s clothing and the Cadillac to the dispatcher. Though she mostly tried to remain hidden, Ranger Smith saw Butler remove items from the green truck, place them inside the Cadillac, return to the driver’s seat of the Cadillac, and drive away. Ranger Smith never saw Seabrooks exit the Cadillac.
Soon after the Cadillac drove away, the police arrived in the parking lot, interviewed Ranger Smith for about five minutes, and left, A short time after the police left, Ranger Smith observed the same Cadillac return to the parking lot. Ranger Smith radioed the police dispatcher again to inform the police that the Cadillac had returned. After remaining in the parking lot for some timé, the Cadillac attempted to leave the parking lot, but the police arrived and blocked the parking lot exit.
Lieutenant Ariel Rojas, a Miami police officer, pointed his firearm at the driver of the Cadillac and ordered him to exit the vehicle. In response, Butler, who was still driving, and Seabrooks, who was still in *1330 the passenger’s seat, put their hands up, exited the vehicle, and laid on the ground. Police officers then arrested Butler and Seabrooks.
After Butler and Seabrooks exited the Cadillac, Rojas looked inside and saw three firearms—(1) a holstered revolver laying on the driver’s side floorboard, (2) a semi-automatic pistol, housed in a black gun pouch, laying on top of a cushioned backrest on the passenger’s side seat, and (3) a revolver, with no case or holster, wedged between the driver’s seat and front passenger’s seat. Police officers recovered the firearms from the Cadillac and discovered that they were all loaded.[1]
Police officers contacted Cruz shortly after the theft. Cruz confirmed that his truck was parked at the Grapeland Park parking lot at the time of the theft. Cruz further confirmed that the handle of the passenger-side door of his truck was damaged, as he observed a hole in the handle that was used to gain access to his truck.
Police officers showed the firearms recovered from the Cadillac to Cruz, and Cruz confirmed the firearms were his. Cruz typically stored those firearms inside his truck. Cruz kept the firearms in pouches or holsters to protect the surfaces of the firearms.
B. Seabrooks’s Post-Arrest Statements
Orlando Merced was one of the police officers who responded to the dispatch call to Grapeland Park. Officer Merced approached a handcuffed Seabrooks to conduct a fingerprint identification with a portable device. Seabrooks asked what the device was for and Officer Merced responded that it was for identification and to see if Seabrooks touched the gun. Sea-brooks stated, “Oh, well, I touched the little gun, Officer — You’ll find my fingerprints on the small gun.”
In a post-Miranda police interview, Sea-brooks admitted that he took all three firearms from Butler and placed them in the console of the Cadillac. According to Seabrooks, one of the items that Butler handed to him was a black pouch obtained from Cruz’s truck. Seabrooks opened the pouch and saw that it contained a semiautomatic pistol. Seabrooks stated that he “[didn’t] want no guns around [him], period,” so he put the gun and pouch in the center armrest.
Seabrooks stated that he did not know Butler intended to steal firearms from Cruz’s truck and repeatedly contended that he never got out of the car and, therefore, did not participate in the theft. Seabrooks explained that the intent was “not to go get no guns,” but “[t]he intent was just try to get some money.” Sea-brooks acknowledged, however, that he remained in the Cadillac while Butler broke into Cruz’s truck and handed over the stolen firearms.
When told he was being charged with being a felon in possession of a firearm, Seabrooks was adamant that he did not “possess” any of the firearms, as he only incidentally handled a single firearm that he quickly stored away from his person. In fact, Seabrooks claimed that he and Butler returned to the parking lot so that they could return the guns to Cruz’s truck.
C. Indictment, Trial, Jury Instructions, and Guilty Verdict
A federal grand jury returned a two-count indictment against Butler and Sea- *1331 brooks. The indictment charged Butler and Seabrooks each with committing one count of being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 924(g)(1) and 924(e)(1) (Count 1), and one count of possessing a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count 2). Butler pled guilty to both counts in the indictment. Seabrooks proceeded to trial.
■ At trial, the government presented several witnesses.. In relevant part, Ranger Smith. testified about how she witnessed the theft of items from Cruz’s truck;. Lieutenant Rojas testified about the apprehension of the defendants and the firearms recovered from the Cadillac; and Cruz testified that those firearms were stolen from his truck. While Seabrooks did not testify, the government introduced to the jury Seabrooks’s post-arrest statement to Officer Merced, as well as the admissions he made to police in his post-Miranda interview.
Before resting, the government read the jury a stipulation signed by counsel for both parties stating that: (1) Seabrooks previously was convicted of a felony involving theft and the possession of a firearm; (2) Butler previously was convicted of the felony offense of burglary of an unoccupied conveyance; and (3) neither Seabrooks nor Butler had had their rights restored and, therefore, neither was legally allowed to possess a firearm or ammunition.
Prior to closing arguments, Seabrooks objected to the inclusion of an aiding and abetting jury instruction on the grounds that the evidence did not warrant that instruction. The government responded that the instruction was proper, recounting the evidence presented. The district court overruled the objection, concluding that “the aiding and abetting instruction is proper with regard to Mr. Seabrooks’[s] participation.”
The district court’s jury instruction on aiding and abetting stated:
It is possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person or agent or it may be done by acting with or under the direction of others. :
A defendant aids and abets another person if the defendant intentionally joins with a person to commit a crime.
A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.
A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee or other associate. But finding that a defendant is criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated with the crime, not just proof that the defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.
The jury found Seabrooks guilty on both counts.
D. Sentencing
The Presentence Investigation Report (“PSI”) recommended a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(B). The PSI also recommended (1) a 2-level increase under U.S.S.G. § 2K2.1(b)(l)(A) because the offense involved three firearms, (2) a 2-level increase under U.S.S.G. § 2K2.1(b)(4) because the offense involved stolen firearms, (3) a 4-level increase under U.S.S.G. § 2K2.1(b)(6)(B) because *1332 Seabrooks possessed the firearms in connection with another felony offense, and (4) a 2-level increase under U.S.S.G. § 3C1.1 for obstruction of justice. These increases yielded an adjusted offense, level of 30.
The PSI noted that Seabrooks was an armed career criminal because on August 13, 1997, he was convicted in Florida state court of armed robbery with a firearm in six separate cases. Each of those six cases involved armed robberies committed in 1995, on occasions different from one another.[2]
Due to his status as an armed career criminal under § 924(e), Seabrooks’s offense level increased from 30 to 33 under U.S.S.G. § 4B1.4(b)(3)(B). His status as an armed- career criminal raised his criminal history category from III to IV under U.S.S.G. § 4Bl.4(c)(3). With a total offense level of 33 and a criminal history category of IV, the PSI recommended an advisory guidelines range of 188 to 235 months’ imprisonment.
As to Count 1, Seabrooks’s status as an armed career criminal under § 924(e) also raised the statutory minimum from zero to 15 years and the statutory maximum from 10 years to life. The'statutory term applicable to Count 2 was zero to 10 years and remained unaffected by Seabrooks’s status as an armed career criminal under § 924(e).
Seabrooks objected to the PSI, contending: (1) he was entitled to a 2-level decrease under U.S.S.G. § 3B1.2 for his minor role in the offenses; (2) the 2-level increase for obstruction of justice did not apply; and (3) he was not an armed career criminal because he lacked the requisite three felony convictions for a “violent felony” or “serious drug offense.”
At Seabrooks’s January 23, 2015 sentencing hearing, the district court granted Seabrooks’s request for a 2-level decrease due" to his minor role and sustained his objection to the 2-level increase for obstruction of justice. The'district court overruled Seabrooks’s armed-career-criminal objection, finding Seabrooks had the requisite predicate convictions under the ACCA.
Because of his armed-career-criminal status, Seabrooks’s offense level and criminal history category remained at 33 and IV, respectively, and yielded an advisory guidelines range of 188 to 235 months’ imprisonment.
After considering that advisory range and the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Sea-brooks to 188 months’ imprisonment on Count 1 and 120 months’ imprisonment on Count 2 to run concurrently. Seabrooks appealed his convictions and sentence.
II. CONVICTIONS
On appeal, Seabrooks argues that the district court erred by giving the aiding and abetting instruction.
A. Standard of Review
We review de novo the legal correctness - of jury instructions, but we review the district court’s phrasing for abuse of discretion. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). Jury instructions are also subject to harmless error review. United States v. House, 684 F.3d 1173, 1196 (11th Cir. 2012). “An error is harmless if the reviewing court is satisfied ‘beyond a reasonable doubt that the *1333 error complained of did not contribute to the verdict obtained.’ ” Id. at 1197.
We review jury instructions “to determine whether the instructions misstated the law or misled the jury to the prejudice of the objecting party.” United States v. Gibson, 708 F.3d 1256, 1275 (11th Cir. 2013) (quotation marks omitted). We will not reverse a conviction based on a jury instructions challenge “unless we are ‘left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.’ ” Id. But “[w]hen the jury instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though the isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism.” Id. (quotation marks omitted). Moreover, the Supreme Court has admonished that “in reviewing jury instructions, our task is also to view the charge itself as a part of the whole trial,” noting that “[o]ften isolated statements taken from the charge, seemingly prejudicial on their face, are not so when considered in the context of the entire record of the trial.” United States v. Park, 421 U.S. 658, 675-76, 95 S.Ct. 1903, 1913, 44 L.Ed.2d 489 (1975) (quotation marks omitted).
B. Aiding and Abetting Instruction
“Aiding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting so long as the jury is instructed on it.” United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984). Thus, an aiding and abetting instruction is permissible where the evidence presented would support a conviction for that aiding and abetting offense. See id.
To prevail under a theory of aiding and abetting, “the [government must prove: (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission.” United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000). While mere presence is not sufficient to uphold a conviction for aiding and abetting, “presence ... coupled with other evidence of guilt can be adequate to sustain the conviction.” United States v. Bryant, 671 F.2d 450, 454 (11th Cir. 1982). We address the § 922(j) conviction first.
C. 18 U.S.C. § 922(j)
To support a § 922(j) conviction, the government must prove that (1) the defendant possessed a stolen firearm, (2) the firearm was part of interstate commerce,[3] and (3) the' defendant knew or had reason to know that the firearms were stolen. United States v. Smith, 532 F.3d 1125, 1129 (11th Cir. 2008); 18 U.S.C. § 922(j).
Here, the trial evidence showed that Seabrooks aided Butlér in committing a § 922(j) violation, thus authorizing the aiding and abetting instruction. Seabrooks was in the Cadillac when Butler parked beside Cruz’s truck. Seabrooks was also in the Cadillac with the driver’s side window down, when Butler left the car, broke into Cruz’s truck, and stole the firearms. Sea-brooks admitted, during the post-Miranda *1334 interview, that he knew Butler was bringing the stolen firearms into the Cadillac. In that interview, Seabrooks stated: “I seen them ... when [Butler] came in [to the Cadillac] ’cause one of them was not in a pouch and one was, like, inside a pouch but you could see the handle. You could see it.” Seabrooks further acknowledged that Butler handed over the firearms to him and Seabrooks placed the firearms in the Cadillac’s console. Butler and Sea-brooks left the park in the Cadillac and returned a short time later. The stolen firearms were still in the Cadillac when they returned. Seabrooks admitted that he chose to remain in the Cadillac throughout this episode.
A jury could reasonably find that this evidence shows that Seabrooks was a willful participant and assisted Butler in stealing and possessing three firearms. The district court did not err in giving the aiding and abetting instruction.
D. New Rosemond Claim as to § 922(j)
For the first time on appeal, Seabrooks argues, relying on Rosemond v. United States, that to obtain an aiding and abetting instruction on the § 922(j) charge, the government must prove that he had “advance knowledge” of the actions Butler would take. See 572 U.S. -, 134 S.Ct. 1240, 1249, 188 L.Ed.2d 248 (2014). Sea-brooks contends that the government must show that he had advance knowledge that there were firearms in Cruz’s truck and that Butler intended to steal them.
Although Seabrooks objected generally to the aiding and abetting instruction at trial, that general objection to the sufficiency of the evidence did not preserve the more specific Rosemond claim he now raises. Cf. United States v. Dennis, 786 F.2d 1029, 1042 (11th Cir. 1986) (“To preserve an issue at trial for later consideration by an appellate court, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or an objection on other grounds will not suffice.”). Our review of this Rose-mond issue is thus for plain error only. See United States v. Hasson, 333 F.3d 1264, 1277 (11th Cir. 2003).
The government argues that Rosemond does not apply to a § 922(j) crime. The offense in Rosemond was a § 924(c) violation for the use of a firearm during a drug trafficking crime, which requires both (1) participation in the underlying drug crime and (2) the use or carrying of a firearm during that crime. 18 U.S.C. § 924(c). The Rosemond Court noted the compound nature of that offense, calling it a “combination crime” that “punishes the temporal and relational conjunction of two separate acts”: the drug crime and the use of a firearm. 134 S.Ct. at 1248. Defendant Rosemond challenged the instruction allowing the jury to consider whether he aided and abetted his confederate in using a firearm during a drug offense.[4]
The Supreme Court explained in Rose-mond that “[w]hen an accomplice knows beforehand of a confederate’s design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise_” Id. at 1249. By enacting § 924(c), Congress recognized that com *1335 mitting a drug offense with a firearm is more dangerous than committing the predicate drug offense alone. And if the aider and abettor did not know that his confederate would use a firearm during the predicate criminal conduct, he could not have intended to aid in the commission of this more dangerous compound offense. Id. The Rosemond Court noted that an aiding and abetting conviction in a § 924(c) case requires “a state of mind extending to the entire crime.” Id. .at 1248. Thus, to be guilty of aiding and abetting a § 924(c) violation, the defendant must have “advance knowledge” that his confederate would use or carry a gun during the commission of the predicate drug offense.[5] Id. at 1249.
In contrast to a § 924(c) crime, the government contends that in Seabrooks’s § 922© offense, the scienter inquiry is limited to whether the aider and abettor intended to assist in the confederate’s possession of a stolen firearm. There is no second crime or act involved. Possession of a stolen firearm alone is the offense. Sea-brooks thus can be guilty of aiding and abetting the commission of a § 922© offense as long as he intended to facilitate Butler’s possession of stolen firearms. See Rosemond, 134 S.Ct. at 1248. The government' argues that the advance knowledge principle announced in Rosemond does not apply to § 922©. Indeed, Seabrooks cites no decision applying Rosemond to a § 922© crime. There is no error, plain or otherwise.
At bottom, we need not decide the Rose-mond-§ 922© threshold issue because there is no plain error. This is because, even if we were to assume Rosemond somehow applies to a § 922© crime, the Supreme Court in Rosemond recognized the limited nature of its advance knowledge formulation. The Rosemond Court noted that an aiding and abetting conviction does not invariably require that the aider and abettor know the extent of his confederate’s criminal intentions before he initiates the offense conduct. Rather, as the Rosemond Court explained, “if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had [advance] knowledge.” 134 S.Ct. at 1250 n.9. Put another way, the aider and abettor has the requisite criminal intent where his knowledge of the confederate’s use of a firearm is sufficiently in advance such that he can “make the relevant legal (and indeed moral) choice” to participate in the entire § 924(c) offense. Id. This means that even where the offense at issue is. compound, knowledge of the firearm arising after the initiation of the offense may be sufficient to support an aiding and abetting conviction.
Here, assuming arguendo that advance knowledge is required for aiding and abetting a § 922© crime, the evidence was sufficient to support the finding that Sea-brooks intended to aid Butler in the corn- *1336 mission of the possession offense. Even if Seabrooks was not aware that Butler would possess stolen firearms before he began breaking into Cruz’s truck, Sea-brooks did not withdraw from the scene once he realized Butler’s criminal designs. Seabrooks watched Butler park beside Cruz’s truck, leave the Cadillac, break into Cruz’s truck, and steal three guns from within the truck. He did not choose to leave the Cadillac at this time. Moreover, Seabrooks received the stolen firearms from Butler and placed them in the Cadillac’s console, helping Butler to take possession of firearms that Seabrooks knew were stolen. He chose to participate in the entire offense, remaining in the Cadillac from the time that Butler broke into Cruz’s truck to the time that Butler drove away from the scene of the crime.
This evidence was more than sufficient to allow the jury to draw the reasonable inference that Seabrooks intended to aid Butler in possessing stolen firearms. Even assuming arguendo that Rosemond somehow applies to aiding and abetting a ■§ 922(j) crime, this is enough evidence to warrant the aiding and abetting instruction in Seabrooks’s particular case. The district court did not plainly err.
E. 18 U.S.C. § 922(g)
 We turn to the evidence supporting the § 922(g) conviction. To convict a defendant under 18 U.S.C. § 922(g)(1), the government must prove that: (1) the defendant was a felon; (2) the defendant knowingly possessed a firearm; and (3) the firearm affected or was in interstate commerce. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).
Again, the jury could reasonably find, based on the trial evidence, that Sea-brooks • aided Butler in committing a § 922(g) offense. Seabrooks stipulated that Butler was a convicted felon who could not legally possess a firearm. With the Cadillac’s window down, Seabrooks watched Butler break into Cruz’s truck and helped Butler by receiving and then placing the firearms in the Cadillac’s center console. This evidence, along with Seabrooks’s admissions and other evidence outlined above, was sufficient to support the jury’s verdict that Seabrooks aided and abetted Butler in the § 922(g) crime. Accordingly, the district court’s instruction was not reversible error. See Martin, 747 F.2d at 1407.
F. New Rosemond Claim as to § 922(g)’s Possession Element
Seabrooks contends that Rose-mond requires that he have advance knowledge that Butler was going to possess a firearm and was a convicted felon. The government disagrees and argues that the act of possessing a firearm is a single act, not compound, and Rosemond does not apply to possession for the reasons outlined above.
Again we need not decide that threshold issue. This is because, even if Rosemond were to apply to the possession element of a § 922(g) crime, the trial evidence sufficiently showed the requisite knowledge. The relevant inquiry, with respect to Rose-mond and Seabrooks’s state of mind, would be whether the evidence supported the reasonable inference that Seabrooks intended to aid Butler in possessing a firearm. When, from an open car window, Seabrooks saw Butler take the firearms from Cruz’s truck and bring them to him in the Cadillac, he had enough knowledge to “make the relevant legal (and indeed moral) choice” to participate in Butler’s possession of a firearm. See Rosemond, 134 S.Ct. at 1249, 1250 n.9. Seabrooks helped Butler take possession of the firearms by receiving them and placing them in the Cadillac’s console. A reasonable jury *1337 could find that Seabrooks had the requisite knowledge.
G. New Rosemond Claim as to § 922(g)’s Convicted Felon Status Element
Again relying on Rosemond, Sea-brooks separately- contends that the aiding and abetting instruction was warranted only if he had advance knowledge that Butler was a convicted felon.
Neither this Court nor the Supreme Court has addressed the question of whether a defendant’s knowledge that the principal was a convicted felon is an essential element of the offense of aiding and abetting a § 922(g) violation, and the circuits that have addressed it disagree. Compare United States v. Canon, 993 F.2d 1439, 1442 (9th Cir. 1993) (“The government did not have to prove Canon, as a principal, knew he was a felon. No greater knowledge requirement applies to [an aider and abettor].”) (citation omitted), with United States v. Ford, 821 F.3d 63, 74 (1st Cir. 2016) (“[T]he government need prove beyond a reasonable doubt that the putative aider and abettor knew the facts that make the principal’s conduct criminal. In [a § 922(g) case], that means that the government must prove that [the defendant] knew that [the principal] had previously been convicted of a crime punishable by more than a year in prison.”), United States v. Samuels, 621 F.3d 804, 812 (7th Cir. 2008) (“[T]o aid and abet a felon in possession of a firearm, the defendant must-know or have reason to know that the individual is a felon at the time of the aiding and abetting ..., ”), United States v. Gardner, 488 F.3d 700, 715 (6th Cir. 2007) (holding that “in order for. aiding- and-abetting liability to attach under § 922(g), the government must show that the defendant knew or had cause to know that the principal was a convicted felon”), and United States v. Xavier, 2 F.3d 1281, 1286 (3d Cir. 1993) (“The government concedes ‘proof of knowledge (or reasonable cause to believe) of an ex-felon’s status is a required element for conviction, as aii aider and abettor, under Section 922(g)(1).’ We agree.”).
We need not decide this question because there can be no plain error when neither the Supreme Court nor this Court has resolved the issue and other circuits are split. United States v. Evans, 478 F.3d 1332, 1338. (11th Cir.), cert. denied, 562 U.S. 910, 128 S.Ct. 257, 169 L.Ed.2d 188 (2007). Thus, Seabrooks has not satisfied his burden of demonstrating plain error.
H. Jury Confusion
We also reject Seabrooks’s claim that the aiding and abetting instruction, along with the government’s closing argument, were confusing or misleading. Sea-brooks argues, inter alia, that the instruction was misleading by virtue of the fact that the court redacted Butler’s name when it read the indictment during voir dire. According to Seabrooks, this fact confused the jury by suggesting that it could find him guilty of aiding and abetting himself. Trial witnesses made repeated reference to Butler and discussed his role in the offense. And both Seabrooks and the government made reference to Butler in their closing arguments. In fact, Seabrooks stipulated that Butler was a convicted felon who legally was not allowed to possess a firearm. The aiding and abetting instruction itself made it clear that a defendant can incur liability under an aiding and abetting theory only where he joins with another person in the commission of the crime.
Under the factual circumstances and evidence in this case, Seabrooks has shown no reversible error as to the aiding and abetting instruction.
*1338 III. SENTENCE
Seabrooks argues that the district court erred by overruling his objection to his armed-career-criminal designation under § 924(e). Seabrooks asserts that his six prior Florida armed robbery convictions do not qualify as violent felonies under the ACCA. Whether a particular conviction is a violent felony under “the ACCA is a question of law we consider de novo.” United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009). Although our panel members disagree as to the reasons why, all panel members conclude that Sea-brooks is an armed career criminal under § 924(e) because his prior Florida armed robbery convictions under Fla. Stat. § 812.13 qualify as violent felonies under the ACCA’s elements clause in § 924(e)(2)(B)(I).
Thus, the ACCA, the Florida robbery statute, and the relevant case law are reviewed below.
A. The ACCA
A felon in possession of a firearm who has at least three prior convictions “for a violent felony or a serious drug offense, or both, committed on occasions different from one another,” is subject to an enhanced statutory penalty under the ACCA. 18 U.S.C. § 924(e)(1). The ACCA defines the term “violent felony” as any crime punishable by a term of imprisonment exceeding one year that:
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
Id. § 924(e)(2)(B). The first prong is referred to as the “elements clause.” The second prong contains the “enumerated crimes” and the “residual clause.” United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).
Armed robbery is not an enumerated crime, and the Supreme Court has held that the residual clause is unconstitutionally vague. Johnson v. United States, 576 U.S. -, -, 135 S.Ct. 2551, 2557-58, 2563, 192 L.Ed.2d 569 (2015). This case involves only the elements clause. Thus, the salient question is whether a conviction for armed robbery with a firearm under Florida law “has as an element the use, attempted use, or threatened use of physical force against the person of another.” 18 U.S.C. § 924(e)(2)(B)(i). In other words, does a Florida armed robbery conviction qualify as a “violent felony” under the ACCA’s elements clause?
B. Florida Robbery Statute
Seabrooks committed his armed robbery offenses in 1995. Florida’s robbery statute in § 812.13 sets forth the elements of robbery and armed robbery as follows:
(1) “Robbery” means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
(2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable ... as provided in s. 775.082, s. 775.083, or s. 775.084.
Fla. Stat. § 812.13 (1995) (emphasis added). Robbery requires that in the course of the taking there is either “the use of force, *1339 violence, assault, or putting in fear.” Id. § 812.13(1). The requirement of “force, violence, assault, or putting in fear” has been in the robbery statute from at least the 1970⅛.[6] Robbery under § 812.13(1) does not involve a firearm and is a second-degree felony. Id. § 812.13(2)(c). Armed robbery requires that the defendant “carried” a firearm or other deadly weapon and is a first degree felony. Id. § 812.13(2)(a).
Because the robbery statute has included the requirement of “force, violence, assault, or putting in fear” from the 1970’s to the present, it is helpful to review our decisions about § 812.13 robbery convictions through the years.
C. Eleventh Circuit Decisions in Dowd and its Progeny
In 2006, this Court held that a 1974 Florida conviction for armed robbery “is undeniably a conviction for a violent felony” under the ACCA’s elements clause. United States v. Dowd, 451 F.3d 1244, 1255 (11th Cir. 2006). This Court, citing only the elements clause, “conclude[d] without difficulty” that the defendant’s Florida armed robbery conviction qualified as a violent felony. Id.
This Court has followed Dowd in several recent cases. In re Hires, 825 F.3d 1297 (11th Cir. 2016) (rejecting the claim that Descamps v. United States, 570 U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), undermined our precedent in Dowd and holding that the defendant’s 1995 Florida robbery conviction qualified as a violent felony under the ACCA’s elements clause, which includes “any felony that ‘has as an element the use, attempted use, or threatened use of physical force’ ”); In re Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016) (citing Dowd and holding that the defendant’s 1980 and 1986 Florida “convictions for armed robbery qualify as ACCA predicates under the elements clause”); In re Moore, 830 F.3d 1268, 1271 (11th Cir. 2016) (concluding that the defendant’s two Florida robbery-with-a-firearm convictions and his armed robbery conviction “qualify as violent felonies under our binding precedent” in Dowd and Thomas).[7] Accordingly, under Dowd and its progeny, a Floridá armed robbery conviction, such as Sea-brooks’s, categorically qualifies as a violent felony under the ACCA’s elements clause.
I am mindful that Judge Martin and I view Dowd differently. My view is that Dowd and its progeny control under our prior panel precedent rule discussed below. Judge Martin’s view is that Dowd “is no longer good law.”
Judge Baldock’s concurrence declines to reach any issue about Dowd because (1) “United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011) answers in the affirmative the question of whether [Seabrooks] qualifies as an armed career criminal for federal sentencing purposes,” and (2) “[tjhat prior precedent is controlling on this panel with or without United States v. Dowd.” Judge Baldock “would resolve the sentencing issue in this case on the basis of Lockley alone.”
*1340 . As an independent and alternative ground for affirmance, I likewise conclude that, under “Lockley alone,” Seabrooks “qualifies as an armed career criminal for federal sentencing purposes.” Therefore, I next discuss Lockley since at bottom we all agree it binds us as to Seabrooks’s 1997 armed robbery convictions.
Í). Eleventh Circuit Decision in Lock-ley
In Lockley, this Court held that a Florida robbery conviction under § 812.13(1), even without a firearm, qualifies as a “crime of violence” under the elements clause in the career offender guideline in U.S.S.G. § 4B1.2(a), which has the same elements clause as the ACCA. Lockley, 632 F.3d at 1245; In re Robinson, 822 F.3d 1196, 1197 (11th Cir. 2016) (citing Lockley and concluding in an ACCA case that the defendant’s 1991 armed robbery offense has “as an element the use, attempted use, or threatened use of physical force against the person of another”). As outlined below, Lockley focused on the elements in the Florida robbery statute.
Applying the pure categorical approach in Lockley, this Court examined the elements of a robbery offense under Florida law, starting with “the taking of money or other property.” See § 812.13(1); Lockley, 632 F.3d at 1240 (“We ... disregard the facts of the underlying conviction and look only to the elements of Lockley’s prior conviction.”). Applying Florida law about the elements, the Lockley Court found (1) that the taking must be by use of force, violence, assault, or putting the victim in fear, and (2) that “the fear contemplated by the statute is the fear of death or great bodily harm,” stating:
The taking referred to ‘must be by the use of force or violence or by assault so as to overcome the resistance of the victim, or by putting him in fear so that the victim does not resist.” Fla. Std. Jmy Instr. (Crim.) 15.1. The property ■taken need not be taken from the actual person of the victim, but must be sufficiently under his control “so that it cannot be taken without the use of force, violence, .or intimidation directed against the victim.” Id, Assault, in turn, is defined as “an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that violence is imminent.” Fla. Stat. § 784.011(1). And, “[t]he fear contemplated by the statute is the fear of death or great bodily harm.” Magnotti v. State, 842 So.2d 963, 965 (Fla. 4th Dist. Ct. App. 2003) (internal quotation marks omitted).
632 F.3d at 1242 (footnote omitted).
The Lockley Court then concluded that the “commission of robbery in violation of Fla. Stat. § 812.13(1) necessarily requires that the defendant”:
(1) commit a taking of money or other property from another person or in the custody of another person (2) with the intent to permanently or temporarily deprive the person of the money or property or any benefit thereof (3) using force, violence, or an intentional threat of imminent force or violence against another coupled with an apparent ability to use that force or violence, or by causing the person to fear death or great bodily harm (4) where the money or property has value.
Id. at 1242-43 (emphasis added). Applying the categorical approach, the Lockley Court analyzed the least culpable of the acts in § 812.12(1), which was “putting in fear.” The Lockley Court stressed that (1) “ ‘putting in fear,’ per Florida law, involves an act causing the victim to fear death or great bodily harm,” (2) “[w]e can conceive *1341 of no means by which a.defendant could cause such fear absent a threat to the victim’s person,” and (3) “[t]he bare elements of § 812.13(1) ... satisfy. the elements ... clause[ ] of U.S.S.G. § 4B1.2(a).” Id. at 1244-45 (citation omitted) (footnote omitted).
Later on, the Lockley Court repeated that (1) “robbery under that statute requires either the use of force, violence, a threat of imminent force or violence coupled with apparent ability, or some act that puts the victim in fear of death or great bodily harm,” (2) “[a]ll but the latter option specifically require the use or threatened use of physical force against the person of another,” (3) “we find it inconceivable that any act which causes the victim to fear* death or great bodily harm would not involve the use or threatened use of physical force,” and (4) “[sjection 812.13(1) accordingly has, as an element, the ‘use, attempted use, or threatened use of physical force against the person of another.’ U.S.S.G. § 4B1.2(a)(l).” Id. (emphasis added). In Lockley this Court thus held that Florida robbery is categorically a crime of violence under the elements of even the least culpable of these acts criminalized by Fla. Stat. § 812.13(1).
As Judge Baldock’s concurrence notes, even without Dowd, Seabrooks’s armed robbéry convictions qualify as ACCA-vio-lent felonies under Lockley.
E. Binding Prior Precedent
Given Judge Martin’s concurrence would discard Dowd, I also explain why our prior panel precedent rule requires that both Dowd and Lockley be followed. Under our well-established prior panel precedent rule, the holding of Dowd, as the first panel to address the ACCA-Florida armed robbery issue, “is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel’s holding is overruled by the Court sitting en banc or by the Supreme Court.” Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001). Under the prior panel, precedent rule, our subsequent panel in Seabrooks cannot overrule a prior one’s holding in Dowd even if convinced it is wrong. See United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).
It is also irrelevant whether the panel in Dowd (or Lockley for that matter) considered all possible issues or arguments. See Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1234 (11th Cir. 2006) (explaining that “a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel”); Cohen v. Office Depot, 204 F.3d 1069, 1076 (11th Cir. 2000) (noting that the prior panel precedent rule does not depend on “a subsequent panel’s appraisal of the initial decision’s correctness”).
Accordingly, Dowd and Lockley control the outcome of this case in favor of the government unless their holdings have been overruled by this Court sitting én banc or by the U.S. Supreme Court. Smith, 236 F.3d at 1300 n.8. Seabrooks does not contend that any en banc decision of this Court overrules Dowd or Lockley. Rather, in an effort to overcome the prior precedent rule, Seabrooks argues that Dowd and Lockley are undermined by the Supreme Court’s decision in Curtis Johnson v. United States, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). As explained below, Seabrooks’s argument fails.
F. Curtis Johnson v. United States (2010)
First, Seabrooks ignores that Lockley was decided after, and even cited, Curtis Johnson. This is yet an additional reason that Lockley binds us here. See Smith, 236 F.3d at 1303 (“[W]e categorically reject *1342 any exception to the prior panel precedent rule based upon a perceived defect in the prior panel’s reasoning or analysis as it relates- to the law in existence at that time”).
Second, and.in any event, nothing in Curtis Johnson, a simple battery case, undermines our binding precedent in Dowd or Lockley about robbery and armed robbery crimes. In Curtis Johnson, the Supreme Court considered whether the Florida offense of simple battery by “touching” another person had as an element the use of physical force. 559 U.S. at 135, 130 S.Ct. at 1268'. The Supreme Court noted that a conviction for simple battery “ordinarily is a first-degree misdemeanor ... but is a third-degree felony for a defendant who (like Johnson) has been convicted of battery (even simple battery) before.” Id. at 136, 130 S.Ct. at 1269. Thus, Curtis Johnson’s simple battery conviction was for only touching, conduct that was a misdemeanor but for his prior conviction.
Furthermore, Curtis Johnson did not involve (1) an act that put the victim “in fear of death or great bodily harm,” which Lockley held that “putting in fear” under Florida robbery law requires, or (2) the “attempted” or “threatened use of physical force,” which is also included in the elements clause. See Lockley, 632 F.3d at 1244; see also Leocal v. Ashcroft, 543 U.S. 1, 8-9, 125 S.Ct. 377, 382, 160 L.Ed.2d 271 (2004) (discussing negligence and cautioning that “[w]e do not deal here with an attempted or threatened use of force.”). Seabrooks cannot use Curtis Johnson to circumvent Dowd or Lockley.
G. Mathis and Descamps
Seabrooks also argues that Dowd and Lockley are undermined by Mathis v. United States, 579 U.S. -, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016) (Iowa burglary and the enumerated crimes clause) and Descamps, 570 U.S. at -, 133 S.Ct. at 2282 (California burglary and the enumerated crimes clause). Of course, Mathis and Descamps involved neither Florida robbery nor the elements clause.
More importantly, these Supreme Court decisions actually underscore why both Lockley and Dowd were coirectly decided. In both Mathis and Descamps, the Supreme Court instructed that in determining whether a state conviction qualifies as a predicate under the ACCA, courts first examine the elements of the statute of conviction and not the particular underlying facts of the defendant’s crime. Mathis, 579 U.S. at -, 136 S.Ct. at 2251-52; Descamps, 570 U.S. at -, 133 S.Ct. at 2283. This is known as the categorical approach.[8] Id. Mathis also tells us to look to state court decisions interpreting state criminal statutes. Mathis, 579 U.S. at -, 136 S.Ct. at 2256-57.
As explained above, Lockley applied that pure categorical approach, examined the statutory elements, and reviewed the relevant Florida court decisions. Dowd too was not based on the particular underlying facts of the defendant’s crime, but was *1343 based on the armed robbery conviction being “undeniably,” or in other words categorically, a violent felony. Nothing in Mathis or Descamps undermines Dowd or Lockley.[9]
H. Sudden Snatching Statute Enacted in 1999
In another effort to avoid our binding Lockley precedent, Seabrooks stresses that he was arrested in 1995 and convicted in 1997. Seabrooks contends that becausé defendant Lockley was convicted in 2001, the Lockley decision should be narrowly limited to only robbery convictions .that occurred after 1999, when Florida enacted a sudden snatching criminal statute.[10] Sea-brooks argues that, before the enactment of that 1999 statute, the least culpable means. of committing a robbery under § 812.13(1) was not “putting in fear,” but was mere “sudden snatching” of a purse without any physical force or any putting in fear.
•One problem for Seabrooks is that Lockley’s holding was not based on an artificial time divide between before and after Florida’s enactment of the 1999 sudden snatching statute. Rather and importantly, Lockley’s holding was based on the actual requirements of the robbery crime in Florida’s robbery statute, § 812.13(1), specifically “force, violence, assault, or putting in fear,” which have not changed from the 1970’s to the present. That is why Lockley’s holding—that a Florida robbery has as an element “the use, attempted use, or threatened use of physical force”—controls Seabrooks’s 1997 armed robbery convictions, just as it did defendant Lockley’s 2001 robbery convictions.
Lockley alone is enough. But there is more. The Florida Supreme Court itself has concluded that a Florida robbery conviction has never included mere snatching because snatching is theft only and does not involve the degree of physical force needed to sustain a robbery conviction under § 812.13(1). Robinson v. State, 692 So.2d 883, 886 (Fla. 1997); McCloud v. State, 335 So.2d 257, 258-59 (Fla. 1976); Montsdoca v. State, 84 Fla. 82, 93 Sd. 157, 159 (1922). In 1997, the Florida Supreme Court in Robinson pointed to its own 1976 decision in McCloud and stressed that robbery requires “more than the force necessary to remove the property” and in fact requires both “resistance by the victim” and “physical force by the offender” that overcomes that resistance, stating:
In accord with our decision in McCloud, we find that in order for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person. Rather, there must be resistance by the victim that is overcome by the physical force of the offender.
*1344 Id. In Robinson, the Florida Supreme Court reaffirmed that “[t]he snatching or grabbing of property without such resistance by the victim amounts to theft rather than robbery.” Id.- at 887. The Robinson court further stated that “Florida courts have consistently recognized that in snatching situations, the element of force as defined herein distinguishes the offenses of theft and robbery.” Id. In other words, Robinson reaffirmed that merely snatching property—without resistance by the victim and use of physical ■ force to overcome the victim’s resistance—did not constitute a robbery under § 812.13(1).
When the Florida Supreme Court in Robinson interprets the robbery statute, it tells us what that statute always meant. Rivers v. Roadway Express, Inc., 511 U.S. 298, 812-13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (“A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision giving rise to that construction.”); id. at 313 n.12, 114 S.Ct. 1510 (“[WJhen this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.”). This is patently true here because Robinson said its holding was “[i]n accord with [its] decision in McCloud” in 1976.[11]
Indeed, since 1922, the- Florida Supreme Court has held that “[t]he force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim’s resistance.” Montsdoca, 93 So. at 159 (Fla. 1922). Notably, the Florida Supreme Court instructed: “There can be no robbery without violence, and there can be no larceny with it. It is violence that makes robbery an offense of greater atrocity than larceny.” Id.
I. Welch’s Holding Is Based on Only the Residual Clause
Because Judge Martin’s concurrence relies heavily on dicta in United States v. Welch, 683 F.3d 1304 (11th Cir. 2012), that case is discussed. To place that dicta in context, it must be noted that this Court in Welch held only that a 1996 Florida robbery conviction was a violent felony under the ACCA’s residual clause. The Welch Court did not decide any elements clause issue because it concluded that a snatching “suffices under the [ACCA’s] residual clause.” Id. at 1313. Simply put, Welch contains no ruling, much less a holding, about Florida’s robbery statute- under the elements clause.[12] In any event, we are *1345 bound to follow Dowd (2006) and Lockley (2011), not Welch (2012) as to the elements clause.
I do recognize that the defendant in Welch made the same argument Sea-brooks does—that Lockley is distinguishable “because Lockley was convicted [in 2001] after Florida promulgated the ‘sudden snatching’ statute [in 1999], so snatching from the person might furnish the basis for a robbery conviction here but not in Lockley.” Id. at 1310, 1312. But, as demonstrated above, Lockley focused on the elements 'in "the robbery statute and made no temporal distinction between before and after the enactment of the sudden snatching statute. Welch’s dicta about sudden snatching is not just dicta, but wrong dicta.[13]
J. In re Jackson’s Discussion of Lock-ley
To be complete, In re Jackson, 826 F.3d 1343 (11th Cir. 2016), cited Lockley and suggested in dicta that Lockley might be distinguished by a possible temporal dividing line between “pre-2000” Florida robberies and post-2000 robberies. In making this suggestion, the In re Jackson Court said that (1) Lockley “construed a very different statutory scheme”; (2) that “[i]n 2000, the Florida legislature. separated robbery by sudden snatching into its own statute” in Fla. Stat. § 812.131; and (3) “Lockley analyzed this later scheme and held that this new version of § 812.13(1) met United States Sentencing Guidelines § 4B1.2’s ‘elements clause’ definition.” Id. at 1346-47 (emphasis added). While Florida in 1999 did enact a new sudden snatching statute codified at § 812.131, Florida did not change the separate § 812.13(1) robbery statute. There is no “new version of § 812.13(1)” in 1999.
Because the requirement of “force, violence, assault, or putting in fear” in the § 812.13(1) robbery statute has remained the same, our prior panel precedent in Dowd and Lockley involves that same statute and binds us here. See, e.g., Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000) (“[W]here two prior panel decisions conflict we are bound to follow the oldest one.”); United States v. Hornaday, 392 F.3d 1306, 1316 (11th Cir. 2004) (“Where there is a conflict between a prior panel decision and those,that came before it, we must follow the earlier ones.”); Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) (“[W]hen a later panel decision contradicts an earlier one, the earlier panel decision controls.”). In fact, that Lockley necessarily applies to Seabrooks’s 1997 Florida convictions illustrates why there is no artificial “pre-2000” dividing line as-to Florida’s robbery statute in § 812.13(1).[14]
*1346 IV. CONCLUSION
For all of these reasons, we affirm Sea-brooks’s convictions and 188 months’ sentence.
AFFIRMED.

. The indictment charged that the firearms and ammunition stolen from Cruz's truck included: "1. One (1) Raven Arms .25 Caliber pistol; 2. One (1) Amadeo Rossi .38 caliber pistol; 3. Six (6) rounds of .25 caliber ammunition; 4. Four (4) rounds of .38 special caliber ammunition; and 5. Four (4) rounds of .38 caliber ammunition." The third firearm was also a .38 caliber pistol.

. The unobjected-to facts in the PSI indicated that, in 1995, Seabrooks robbed with a firearm: (1) a Payless store on September 23; (2) a Payless store on September 28; (3) another Payless store on September 28; (4) a Payless store on October 6; (5) a Texaco station on October 12; and (6) the drive-thru of a Captain Crab restaurant on October 12.

. On appeal, Seabrooks makes no argument regarding the interstate commerce elements of his § 922(¡) and § 922(g) offenses. The^ government’s expert, special Agent Javier Ribas, testified that two of the firearms stolen from Cruz’s truck and all ammunition found in all firearms were manufactured outside of Florida and thus had traveled in interstate commerce.

. In Rosemond, the government presented the jury with alternative theories: (1) that Rose-mond himself used a gun during the commission of a drug crime and (2) that Rosemond aided and abetted his confederate in using a gun during a drug crime. The district court gave an aiding and abetting jury instruction. The general jury verdict did not indicate under which theory it found Rosemond guilty, and Rosemond challenged the aiding and abetting instruction on appeal. Rosemond, 134 S.Ct. at 1243-44.

. The Rosemond Court distinguished between the actus reus and mens rea elements of an aiding and abetting violation. With respect to the affirmative act or actus reus, the Supreme Court said that the defendant need not have aided in the commission of the entire crime. It is enough that the defendant aided in one part of a multi-element offense. Rosemond, 134 S.Ct. at 1246-47. In the context of § 924(c), this means that the defendant’s con-, duct or actus reus is sufficient to warrant aiding and abetting liability where he aided in the commission of the predicate drug offense, but not in the use of a firearm during that underlying offense. Id.
With respect to the culpable state of mind or mens rea, however, the aiding and abetting theory in a § 924(c) case requires some evidence that the defendant intended to facilitate both the underlying drug offense and the use of a firearm during its commission. Id.

. In 1992, however, the robbery statute in § 812.13(1) was amended to add this language: "with intent to either permanently or temporarily deprive the person or the owner of the money or other property.” 1992 Fla. Sess. Law Serv. Ch. 92-155 (West). But the language of "the use of force, violence, assault, or putting in fear" did not change.

. Counsel represented each of the defendants in In re Hires, In re Thomas, and In re Moore, all of which had briefing. In each case this Court denied on the merits the defendant’s application to file a second or successive § 2255 motion challenging an ACCA sentence that was based on a prior Florida robbery or armed robbery conviction.

. Mathis and Descamps also address the modified categorical approach, which applies when a state statute lists elements in the alternative and defines multiple crimes. Mathis, 579 U.S. at -, 136 S.Ct. at 2249; Descamps, 570 U.S. at -, 133 S.Ct. at 2284-85. If the statute sets out multiple crimes and is divisible, the courts may use the modified categorical approach and look at certain record documents. Id. In this case, we need not decide if the robbery statute is divisible or indivisible because Seabrooks’s armed robbery conviction qualifies under the categorical approach in any event. Further, we need not discuss § 812.13(2), where a firearm or deadly weapon is an element, because robbery under § 812.13(1), even without a firearm, qualifies as a violent felony under Loclc-ley.

. Judge Martin’s concurrence mainly criticizes Dowd's cursory mode of analysis, but it is Dowd's holding that counts. And Lockley, which had a robust analysis, shows Dowd is correct.

. Florida's sudden snatching statute requires only a taking and no physical force:
(1) ‘‘Robbery by sudden snatching” means the taking of money or other property from the victim's person, with intent to permanently or temporarily deprive the victim or the owner of the money or other property, when, in the course of the taking, the victim was or became aware of the taking. In order to satisfy this definition, it is not necessary to show that:
(a) The offender used any amount of force beyond that effort necessary to obtain possession of the money or other property; or (b) There was any resistance by the victim to the offender or that there was injury to the victim’s person.
Fla. Stat. § 812.131 (1999) (emphasis added).

. Judge Martin’s concurrence quotes McCloud out of context. The Florida Supreme Court in McCloud emphasized that the defendant exerted such physical force that the victim fell to the ground and the defendant attempted to kick the victim, stating:
The facts developed at McCloud’s trial indicate that he gained possession of his victim’s purse not by stealth, but by exerting physical force to extract it from her grasp. McCloud’s victim carried her handbag by a strap which she continued to hold after the purse had been seized by McCloud. She released the strap only after she fell to the ground. Furthermore, there was evidence the jury could believe which showed that McCloud attempted to kick his victim while she lay on the ground and after the purse had been secured.
335 So,2d at 259. This was the “physical force" evidence that the Florida Supreme Court relied on to sustain McCloud's robbery conviction under § 812.13(1).

. After Welch was decided, Johnson held that the ACCA's residual clause was unconstitutionally vague. 576 U.S. at -, -, 135 S.Ct, at 2557-58, 2563. Welch's § 2255 motion then argued that Johnson applied retroactively to his sentence. The Supreme Court agreed and remanded Welch’s § 2255 motion to this Court to determine whether the district court’s denial was correct "on other grounds" than the residual clause. The Supreme Court noted that "the parties continue to dispute whether Welch’s strong-arm robbery conviction qualifies as a violent felony under the elements clause of the Act.” See Welch v. *1345 United States, 578 U.S. -, -, 136 S.Ct. 1257, 1268, 194 L.Ed.2d 387 (2016).

. Although Judge Martin’s concurrence acknowledges that Welch ruled on only the residual clause, not the elements clause, it suggests that Welch’s analysis binds us. The concurrence cherry picks phrases and ignores that, even as to its residual-clause analysis, the Welch Court $aid that it only "assume[d] for purposes of analysis that Welch pleaded guilty to robbery at a time when mere snatching sufficed.” Welch, 683 F.3d at 1311-12. Thus,"even as to its residual-clause analysis, Welch contains no holding abóut whether sudden snatching sufficed for Florida robbery prior to 1997. The concurrence cites Santiago, but it involved a substantial degree of force in that the "defendant reached into a car and tore necklaces off of a victim’s neck, leaving scratch marks.” Id. at 1311 n.32 (citing Santiago v. State, 497 So.2d 975, 976 (Fla. 4th Dist. Ct. App. 1986)). In any event, we look to the highest state court decision, which is the Florida Supreme Court in Robinson and its interpretation of its own precedent in McCloud.

. The In re Jackson Court stated in a footnote that "the bulk of Lockley's analysis (at least 13 paragraphs of the opinion) focused on the argument ... [that] 'robbery is an enumerated offense' in § 4B1.2’s application note.” 826 F.3d at 1347 n.2. But, as shown above, Lockley had an extensive analysis of why a Florida robbery conviction categorically qualifies under the elements clause and squarely held it did. In any event, the In re Jackson decision granted the defendant’s application to file a successive § 2255 motion but did not decide the question of whether Jackson’s 1975 robbery conviction qualified under the elements clause. Id. at 1346-47.