[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12979
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20674-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENJIE EARL WRIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 18, 2017)

Before JORDAN, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Benjie Earl Wright appeals the denial of his motion to suppress and his 180-month sentence for being a felon in possession of a firearm or ammunition, 18 U.S.C. §§ 922(g)(1) and 924(e).  Wright asserts the district court erred by denying his motion to suppress evidence when it determined police officers had not exceeded their authority during an investigatory stop and pat-down.  He also contends the district court erred by determining Florida strong armed robbery qualified as a violent felony under the Armed Career Criminal Act (ACCA).  After review,[1] we affirm Wright's conviction and sentence.

## I.  MOTION TO SUPPRESS

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself

---

[1]  We review the district court's denial of a motion to suppress under a mixed standard, reviewing the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts *de novo*.  *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000).  Questions of probable cause and reasonable suspicion are reviewed *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).  We review *de novo* the district court's conclusion that a particular offense constitutes a "violent felony" under 18 U.S.C. § 924(e). *United States v. Wilkerson*, 286 F.3d 1324, 1325 (11th Cir. 2002).

as a policeman and makes reasonable inquiries, . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass make its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *United States v. Griffin*, 696 F.3d 1354, 1363 (11th Cir. 2012) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).

"In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 26. We must look at the "totality of the circumstances" to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273.

The police officers had reasonable suspicion to detain Wright based on articulable facts. The police officers were permitted to rely on the description, given from the victim, that the armed robber suspect was black, heavyset, in his 30s, located in the Yellow Meat Market, wearing a white shirt and black cargo

3

shorts, with a lowboy haircut and tattoos. *See United States v. Hensley*, 469 U.S. 221, 232 (1985) (holding "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information" (internal citations omitted)). The police officers saw Wright, who was black, appeared to be in his 30s, had on dark colored cargo shorts, had tattoos, had a lowboy haircut, and was in the Yellow Meat Market.[2] Officer Yunieski Arriola testified he believed Wright matched the description of the suspect. Officer Arriola testified that, based on his experience, he knew descriptions of suspects can be incorrect because suspects change or discard clothing.

When Officer Arriola asked for his identification, Wright stated that he worked at the Yellow Meat Market and did not provide any identification. Officer Arriola stated the police respond to crime incidents at the Yellow Meat Market once or twice per week. He stated he did not recognize Wright as an employee or regular at the store. He believed Wright lied to the officers when he told them he worked there, based on their frequent visits to the Yellow Meat Market.

---

[2]  Other facts, such as the fact Wright was wearing a black shirt and not a white shirt, was "medium-set" and not heavyset, had on dark cargo shorts and not black cargo shorts, and was sitting calmly in the location of the robbery indicated he might not be the suspect.

4

Based on the totality of the circumstances, including the suspect's description and the officers' familiarity with the Yellow Meat Market, the officers had enough articulable facts amounting to reasonable suspicion and were justified in conducting a brief, investigatory stop. *See Arvizu*, 534 U.S. at 273; *Hensley*, 469 U.S. at 232.

Furthermore, because the officers had reasonable suspicion to believe Wright matched the description of the armed robber, the officers had reasonable suspicion to believe he was armed and dangerous. Based on this reasonable suspicion, the officers were entitled, for their protection, to conduct a carefully limited search of the outer clothing of Wright in an attempt to discover weapons. *See Terry*, 392 U.S. at 30. While *Terry* pat-downs are generally limited to the outer clothing, the Supreme Court also stated in *Terry* that a search for weapons must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. *Id.* at 29. The officers raised the back of Wright's long, baggy shirt no higher than necessary to view his waistband and pat down his back pockets. Therefore, the lifting of Wright's shirt is within the boundary of *Terry* because the intrusion was designed to discover a gun when the officers reasonably believed Wright had a gun and the intrusion was balanced against the necessity of the search.

5

Accordingly, the district court did not err by denying Wright's motion to suppress when the officers did not exceed their authority to detain and pat-down Wright because they had reasonable articulable suspicion that he matched the description of an armed robber and their search was limited to slightly lifting Wright's shirt to expose his waistband and patting down the outside of Wright's cargo shorts. We affirm the district court's denial of Wright's motion to suppress.

## II.  ACCA

Under the ACCA, any person who violates 18 U.S.C. § 922(g), and has 3 previous convictions for a violent felony or a serious drug offense, is subject to a mandatory minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e)(1). The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is referred to as the "elements clause," while the second prong contains the "enumerated crimes" and,

finally, what is commonly called the "residual clause."[3] *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

Prior to 1997, Florida's intermediate appellate courts were divided as to whether a sudden snatching amounted to robbery under Fla. Stat. § 812.13. *See United States v. Welch*, 683 F.3d 1304, 1311 & n.29 (11th Cir. 2012) (citing cases). In 1997, the Florida Supreme Court held mere snatching of property did not amount to robbery under § 812.13 unless the perpetrator employed force greater than that necessary to simply remove the property from the person. *Robinson v. State*, 692 So. 2d 883, 886 (Fla. 1997). It stated "in order for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person." *Id.* It explained the Florida robbery statute required "resistance by the victim that is overcome by the physical force of the offender." *Id.*

In *United States v. Lockley*, we addressed whether a 2001 Florida attempted-robbery conviction qualified as a crime of violence under the elements clause of the career-offender provision of the Sentencing Guidelines. 632 F.3d 1238, 1244 (11th Cir. 2011). We determined Lockley's 2001 Florida

---

[3] In *Johnson*, the Supreme Court held the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. *Johnson v. United States*, 135 S. Ct. 2551, 2557-58, 2563 (2015). The Supreme Court clarified that, in holding the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. *Id.* at 2563.

attempted-robbery conviction categorically constituted a crime of violence under the elements clause of the career-offender guideline. *Lockley*, 632 F.3d at 1244-45.

In *Seabrooks*, we relied on *Lockley* to determine a 1997 Florida armed robbery conviction constituted a violent felony under the ACCA. *See United States v. Seabrooks*, 839 F.3d 1326, 1338-41 (11th Cir. 2016); *id.* at 1346 (Baldock, J. concurring); *id.* at 1346, 1350-51 (Martin, J. concurring). The narrowest ground on which we agreed in *Seabrooks* was that, under *Lockley*, post-*Robinson* Florida armed robbery convictions categorically qualify as violent felonies under the ACCA's elements clause. *See id.* at 1340; *id.* at 1346 (Baldock, J., concurring); *id.* at 1350 (Martin, J., concurring).

Given this Court's holding in *Seabrooks*, Wright's 2000 Florida robbery conviction qualifies as a violent felony under the elements clause of the ACCA.[4] This Court has specifically held a post-1997/post-*Robinson*, Florida armed robbery conviction categorically qualifies as a violent felony under the ACCA's elements clause. *See Seabrooks*, 839 F.3d at 1338-41.

---

[4] Wright does not dispute he has two previous convictions for a serious drug offense that qualify as predicate offenses under the ACCA. Therefore, he only needs a third predicate offense to qualify as an armed career criminal.

Wright's three qualifying convictions[5] subject him to a mandatory minimum sentence of 15 years' imprisonment.  18 U.S.C. § 924(e)(1).  Accordingly, we affirm his sentence.

**AFFIRMED.**

---

[5]  Because Wright's Florida robbery conviction qualifies as a violent felony, he has three previous convictions for a violent felony or serious drug offense and this Court need not review whether Wright's Florida conviction for battery qualifies as a violent felony.

9